IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAZMOND BOOKER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | NO. 25-5203 |

MEMORANDUM

Bartle, J.  December 3, 2025

      Plaintiff Dazmond Booker has sued the City of Philadelphia under 42 U.S.C. § 1983 and Corizon Health of Pennsylvania LLC, CHS TX, Inc., and Correctional Medical Care, Inc. for the common law tort of professional negligence, including vicarious liability and for "Corporate Liability." The action was filed originally in the Court of Common Pleas of Philadelphia County and timely removed. The essence of the plaintiff's claims against the City is that it had a custom or policy of systematic understaffing of the healthcare facilities in its prisons and that as a consequence plaintiff, while a pretrial detainee, suffered damages in violation of the Constitution.

      Before the court is the motion of the City to dismiss the two counts against it under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that plaintiff has not stated a claim upon which relief can be granted.

I

The court of course must accept as true for present purposes all well pleaded facts in the amended complaint. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The court may also consider "exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Wright & Miller's Federal Practice and Procedure § 1357 (2d ed. 1990)). When there is a document "integral to or explicitly relied upon in the complaint," it may also be considered as there is no concern of lack of notice to the plaintiff. See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (quotation marks omitted)).

The complaint must plead more than "labels and conclusions." Twombly, 550 U.S. at 555. It must plead more than "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555, 557) (internal quotations and alterations omitted). Instead, it must recite sufficient factual content to state a claim that is plausible on its face. Id.

II

The well pleaded facts, for present purposes, are taken as true.

Plaintiff was arrested on April 28, 2023 and remained in a city correctional facility until his release on or about December 10, 2024 due to his medical condition. During that nineteen-month period, it developed and worsened.

While in custody, plaintiff experienced issues including symptoms indicative of a neurological disorder. Over time, he had difficulty with medications, needed a cane or walker, had bad eyes, difficulty holding things, was unable to write, and slurred his words. It took a long time to get him into the medical ward of his prison. In August and October, he was either not seen at sick call or appointments were rescheduled due to staff shortage.

In August 2023, he had complaints of shakiness and had pending two nurse sick call appointments. In mid-September, he had torso discomfort, shaking hands, and unsteady speech but had not yet seen a physician. In September, plaintiff advised a nurse he thought he had Parkinson's disease. On September 26, 2023, his medical records note that he had not been seen due to a security issue. On October 1, a nurse noted that he had gait extremity tremors and continuous shaking. In October, he had difficulty walking and pronounced tremors. A nurse was going to

refer him to a specialist and request a CT scan. In late November, he was still waiting for a neurological consultation. He also at this time complained of chest and back cramps, cracking and popping knee, and pain in his ribs. He continued to remain shaky in his speech, movements, and writing and used a cane. The neurological consultation and CT scan were still pending.

  The CT scan was finally performed on December 4, 2023 at Thomas Jefferson University Hospital. It indicated volume loss significantly advanced for plaintiff's age as well as nonspecific periventricular white matter hypodensities not typically seen in patients of his age. He was not seen by a Jefferson neurologist until December 27, 2023. The neurologist opined that his symptoms were consistent with cerebellar ataxia. While she recommended an MRI, none was performed at that time because plaintiff had a metal plate in his jaw.

  In March 2024, plaintiff was transported from the prison to Jefferson Hospital's emergency department as a result of altered mental status, unstable gait, and worsening ataxia. An MRI was finally obtained. On March 11, 2024, he was diagnosed with multiple sclerosis and discharged from the hospital on March 13. He was then transferred to the Detention Center's Infirmary. The physician at Jefferson advised plaintiff's mother of his diagnosis of multiple sclerosis and

ataxia. In mid-December, he was released from the City prison due to his medical condition. The City's December 17, 2024 record stated, "let him home 8-10."

### III

The complaint contains two claims against the City: (1) "Unconstitutional conditions of confinement in violation of the Eighth and Fourteenth Amendments"; and (2) "Municipal Liability under Monell (Policy or Custom)."

The Supreme Court in Monell v. Dep't of Social Services of City of New York, 436 U.S. 658 (1978), held that there is no respondeat superior or vicarious liability against a municipality for claims brought under § 1983. Id. at 691. The Court explained:

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Id. at 694. A policy means a "statement, ordinance, regulation, or decision officially adopted" by the municipality's officers. Id. at 690. A custom is a persistent and widespread practice not authorized by written law but so permanent and well settled as to constitute a "custom or usage" with the force of law. See id. at 691.

The Supreme Court in City of Canton v. Harris, 489 U.S. 378 (1989), later ruled that under the holding in Monell, a municipality may be sued for failure to train its employees but only where the municipality's "failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." Id. at 392. The failure to train as defined is simply one example of a claim against a municipality that meets the test of Monell. See id. at 389-90. Significantly, for liability under Monell to attach, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Id. at 385. It is not sufficient to maintain that the City "could have done" something more to prevent an injury. Id. at 392.

This court agrees with plaintiff that the failure of a municipality to hire adequate staffing to provide healthcare in its prisons, like the failure to train its police, can result in municipal liability. Nonetheless, such liability is viable only if the stringent requirements of Monell and Canton have been satisfied. Negligence and vicarious liability will not suffice. See Canton, 489 U.S. at 385, 388-91; see also Chambers ex rel. Chambers v. Sch. Dist. Of Phila. Bd. Of Educ., 587 F.3d 176, 193, 196 (3d Cir. 2009). The plaintiff must establish that the municipality intentionally deprived him of a federally protected right. See Bd. of Cnty. Comm'rs of Bryon Cnty. v. Brown, 520

U.S. 397, 405 (1997). There must also be a direct link between the unconstitutional policy and the injury to the plaintiff. Id. at 404; Canton, 489 U.S. at 385.

The Supreme Court in Estelle v. Gamble, 429 U.S. 97 (1976), held that state prison officials had a duty to provide medical care to sentenced prisoners. It explained that deliberate indifference to an inmate's serious medical needs gives rise to a § 1983 claim for violating the prohibition against cruel and unusual punishment under the Eighth Amendment as incorporated into the Fourteenth Amendment. Id. at 103-104. Likewise, in Farmer v. Brennan, 511 U.S. 825 (1994), the Court reiterated that prison officials are obligated to provide "humane conditions of confinement" which include "adequate […] medical care." Id. at 832. As to state pretrial detainees, they are protected under the due process clause of the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 nn.16-17 (1979); see also Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005). An unconstitutional policy or custom of a municipality of deliberate indifference to the serious medical needs of a pretrial detainee in its charge could subject the municipality to damages in an action under § 1983.

The plaintiff, as noted, brings two claims against the City. The first alleges an unconstitutional condition of confinement in violation of the Eighth Amendment as incorporated

into the Fourteenth.  A violation of this kind applies only to a prisoner who is convicted of a crime and thus subject to punishment.  Here plaintiff was a pretrial detainee.  He had not been convicted of a crime and was not therefore subject to punishment.  Instead, plaintiff's claim properly falls within the due process clause of the Fourteenth Amendment.  See Wolfish, 441 U.S. at 535 nn.16-17.  Plaintiff's second claim against the City, denominated a claim under Monell, is in essence the same as the first claim but only with a different label.  The two claims for all intents and purposes are intertwined, if not redundant, as liability against a municipality in a § 1983 action is viable only if it meets the requirements of Monell and its progeny.

Plaintiff has alleged that the City has systematically understaffed the healthcare facilities in its prisons and that he, as a pretrial detainee, suffered injury as a consequence.  At oral argument, plaintiff's counsel clarified that plaintiff is challenging a City custom and not a City policy.  Such a custom must be so permanent and well settled as to constitute the force of law.  Monell, 436 U.S. at 691.

Plaintiff, in support of his claims, relies on prior orders of this court, in the cases of Harris v. City of Philadelphia, 82-cv-1847 (E.D. Pa.), United States v. City of Philadelphia, 79-cv-2937 (E.D. Pa.), and Remick v. City of

Philadelphia, 20-cv-1959 (E.D. Pa.).  He states without specifics that they relate to understaffing in the City's prisons but does not reference the contents of any of the court orders on which he relies.  The Harris and United States cases were filed over 40 years ago.  Plaintiff cites to no facts to tie these actions and the circumstances at issue to plaintiff's injuries and circumstances in 2023 and 2024.  The Remick action concerned prison conditions during the COVID-19 pandemic.  It was settled in 2022, shortly after a class was certified.  While the settlement called for adequate and timely medical and mental health treatment, plaintiff has not pleaded how Remick provides factual support for a custom of deliberate indifference to the serious medical needs of plaintiff in 2023 and 2024.

       For municipal liability to attach, the plaintiff must plausibly plead a direct link between a municipal custom and the harm caused.  Canton, 489 U.S. at 385.  Plaintiff recites in detail the chronology of his medical condition and the acts and omissions of medical personnel while he was incarcerated.  What he has not done is plausibly plead a direct causal connection between the City's custom of systematic understaffing and the deterioration of his medical condition.  The plaintiff has sued not only the City but also three providers of healthcare services at the City's prisons: Corizon Health of Pennsylvania LLC, CHS TX, Inc., and Correctional Medical Care, Inc.  The

complaint is replete with the acts and omissions of their personnel.  In paragraph 49 of the complaint, plaintiff names 36 individual healthcare providers who are characterized as "employees, agents and/or servants of Defendants" and who were involved with plaintiff's healthcare during the relevant time period.  Most appear to be employed or associated with these three defendants.  There are only a couple of fleeting references in the complaint to lack of enough security at the prison and no facts from which a direct causal connection between a City custom and his medical problems can be inferred.

      The complaint reads as if plaintiff is seeking to impose liability on the City on a respondeat superior theory for the negligent acts or omissions of its employees or those of the private entities with which the City has contracted to provide medical care to its inmates.  The complaint says nothing about inadequacies of that contract so as to create a viable Monell claim against the City.  The complaint, other than in a conclusory fashion, simply does not plausibly plead facts under Iqbal of a permanent and well settled unconstitutional custom of the City's deliberate indifference to the systematic understaffing in its prisons or any direct causal connection between any unconstitutional custom and the progression of plaintiff's medical condition.

The claims against the City of Philadelphia will be dismissed for failure to state a claim upon which relief can be granted.